15      695
c82     212

## SCULL ET AL. VS. VAUGINE ET AL.

The construction of the statute of descents and distributions, as to real estate acquired by descent, and as to personal property, in the case of *Kelly's Heirs et al. vs. McGuire et al., ante,* approved.

Upon division of property among heirs, and settlement of the widow's claims upon the estate, the heirs execute a deed, to which the widow, who is the grandmother of A. is a party, by which they convey to A. a slave, then in the possession of the grandmother, with the proviso that, "In the event of his death, before he come to the age of twenty-one years, or has heirs of his own, then to revert and become the joint property of the grantors;" and declare the grandmother trustee and guardian of the minor to take and keep possession of the slave for his use; the grandmother continues in possession of the slave, during the lifetime of A., some fifteen years: HELD, That the conveyance created an absolute estate in the grantee, that the proviso is repugnant to the deed and void: that if the grandmother held under the deed, she held according to its legal effect, and not as trustee for the benefit of the grantors; that her possession was adverse, and the statute of limitations a bar to their recovery of the slave.

*Cross Appeals from the Circuit Court of Jefferson County in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

696 CASES IN THE SUPREME COURT

Scull et al. vs. Vaugine et al. [JANUARY

TRAPNALL, for appellants, Scull et al.

YELL, and PIKE & CUMMINS, for Vaugine et al.

The pretended deed of trust executed by Taylor and others, was a mere nullity, because it was executed by parties having no interest whatever, unless it be as to Paul and Francis Vaugine, who were direct heirs of the intestate. As to them, possibly, it had force.

The statute of limitation would clearly attach as against all the other parties, in favor of the party in possession. As to all other parties, it could be nothing more than a *constructive* trust, if any trust at all. In such case, the statute would operate as well in favor of Mary Vaugine, as Marshall and wife, and Joseph Vau-gine. *Sonser and wife vs. De Meyer et al.*, 2 *Paige* 574; *Kane vs. Bloodgood et al.*, 7 *J. C. R.* 90; 4 *Cowen* 718; *Litt. Sel. Cas.* 511; 3 *Litt.* 381; 6 *Monr.* 11; 1 *Dev. & Batt.* 73, 325; 8 *Port.* 211; 9 *Dana* 139; 20 *J. C.* 325; 3 *J. C. R.* 190; 4 *Wash. C. C. R.* 631.

As to those who joined in the deed of trust, and were compe-tent to make it: the deed conveyed an *absolute property to Joe Vaugine*.

The deed is an absolute conveyance, "to have and to hold to him and his heirs," &c.

This gives an absolute estate in real or personal property. Any *subsequent* condition, or proviso, repugnant to it, is simply void. 2 *Black. Com.* 156, 7; *Co. on Lit.*, vol. 2, *p.* 30, 32 *N. S.; Appen-dix N.* 4, 36, 38; *Moody vs. Walker*, 187, 8, 3 *Ark. Rep.; Jar-min on Wills*, 809, 810, &c.

Mr. Justice SCOTT delivered the opinion of the Court.

All the parties, both complainants and defendants, have ap-pealed to this court, and the material facts of the case may be

thus stated: Stephen Vaugine, son of Francis Vaugine, deceased, died intestate, in Jefferson county, in this State, in or about the year 1831, seized and possessed both of real and personal estate, and leaving him surviving a widow named Matilda—who is one of the defendants—and an only child, named Joseph, an infant of tender years. Matilda, the widow of Stephen and mother of Joseph, afterwards married Joseph J. Marshall, who is another one of the defendants. Joseph lived until the year 1846, when he also died, within age, intestate and without issue.

The complainants are Mary F. M. Scull, a daughter of Francis Vaugine, deceased, and several others of the name of Scull, who describe themselves as the heirs and legal representatives of James Scull, deceased; several of the name of Dodge, who describe them-selves as the heirs and legal representatives of John Dodge, de-ceased, and Emma Dodge, deceased; the last named of whom was also a daughter of Francis Vaugine, deceased: several of the name of Vaugine, who describe themselves as the heirs and legal rep-resentatives of Francis N. Vaugine, deceased; the last named of whom was a son of Francis Vaugine, deceased; Paul Vaugine, who is also a son of Francis Vaugine, deceased: several who rep-resent themselves as the heirs of Eulalia Taylor, deceased, who was also a daughter of Francis Vaugine, deceased.

They filed their bill in chancery in the Jefferson Circuit Court, on the 15th day of April, 1847, against the two defendants al-ready mentioned, and also against another named Mary Vaugine, who is the widow of the said Francis Vaugine, the latter having departed this life intestate, as is alleged, soon after the death of his son Stephen. Mary Vaugine, the defendant, is not the mo-ther of any of the complainants, or of any one they represent, or of Stephen, but the step-mother; but she is the maternal grand-mother of Joseph, being the mother of Matilda.

The complainants claim, by their bill, the whole of the pro-perty, real and personal, which, by operation of law, came to Joseph, on the part of his father Stephen, upon the death of the latter. This claim, the defendants, Marshall and wife, deny *in*

88BB

*toto;* and, so far as the personal estate is concerned, they are fully sustained by the construction of our statute of descents and distributions, made during the present term, in the case of *Kelly's Heirs et al. vs. McGuire & wife et al.;* because Mrs. Marshall, under the facts of this case, as we have stated them above, was the sole distributee of her deceased son Joseph, to the exclusion of all other persons. But the real estate, having been inherited by Joseph, from his deceased father Stephen, was in his hands an ancestral estate, *ex parte paterna,* according to the doctrines settled in the case cited, and upon his death without issue, passed by inheritance to his (Joseph's) next of kin of the blood of his father, who was the last purchaser of the estate. And Joseph leaving him surviving, no father, and no mother capable of inheriting, and no brothers, or sisters, or their descendants, his paternal grandfather, grandmother, uncles and aunts, and their descendants, were the next class called to the inheritance. Of these, he had only uncles and aunts, and their descendants; the latter, to take *per stirpes,* the equal share of him or her they represent. These appear as complainants along with others, who seem to have no interest in, or claim to, the inheritance.

The rights of those entitled to inherit, however, are subject to the rights in the land which vested in Mrs. Marshall, as the widow of Stephen, the last purchaser, under the territorial laws: (*Steele & Mc. C. Digest,* 222, 223, 224 *and* 55; 210, 212); and until these parties do equity to her, (who, although she has not sought her rights by cross bill, has, in her answer, interposed the fact that she has never yet received dower in the estate of her deceased husband) they cannot, in conscience, recover from her, to say nothing, by way of objection, to the frame of their pleadings.

In addition to these alleged rights of the complainants below, which have been thus disposed of, they set up claim, as against these defendants, to a certain negro woman named Monnette and her increase, upon the foundation of a state of facts which we will now proceed to set out in the manner insisted upon by them, without any regard to various objections made, on the part of the

defendants, as to the failure and deficiency of proof, as to some of them, or as to the incompetency of some of the evidence allowed by the court below, to prove several of these alleged facts, against the objection of the defendants. It being unnecessary, as will be seen, in the view that we take of this part of the case, to consider these objections.

In the year 1826, Francis Vaugine being then a widower, married a second wife, Mary Derreuisseaux, who is the Mary Vaugine, one of the defendants in this suit. With her, he made a marriage agreement, in which among other things, he stipulated that all her property brought into the marriage, should go to the children of the marriage, if any, and if none, then to Mary's own children by her marriage with Derreuisseaux; and that he would secure to her, by will or otherwise, eighty acres of land, and improvements upon it, with two thousand dollars in slaves, cattle, &c.

On the 1st of January, 1831, which was a few weeks before the death of Francis Vaugine, he executed a deed, conveying to Mary F. Scull, Ulalia Taylor, and Elizabeth Taylor, children of Creed Taylor, Emma Dodge, F. N. Vaugine and Paul Vaugine, a number of parcels of land, describing each; a number of negroes, specifying each by name; a number of cattle, hogs, household and kitchen furniture, farming utensils, &c., and *all other property* the grantor *then* had, or *might die possessed of*, to have and to hold, &c., then following a clause, "It being expressly understood that said property, real and personal, by the grantor here disposed of, is to remain in his possession during his own life time, and on his decease, said property is to be taken possession of by Creed Taylor, James Scull and Francis N. Vaugine, they being of the same degree of kin to the grantor, and having severally paid equal proportions of the five thousand dollars before specified, they to divide the said property equally between the grantees." It having been recited in this deed, that it was executed upon the consideration of love and affection to the grantees, and of five thousand dollars in hand paid, and of the further conside-

ration of the grantees· collectively paying, after the grantor's· death, the unpaid part of his just and lawful debts.

No subscribing witness appears to this deed but from the certificate of John Fisher, it appears to have been acknowledged before him as a justice of the peace, on the 1st day of January, 1830, which was one year before its date.

On the 25th April, 1831, Francis Vaugine being then dead, the parties seem to have assembled at his late residence, which was the then residence of his widow, the defendant Mary, to take into possession, and divide the property in accordance with the provisions of the deed, when difficulties arose from two sources, to wit: *First*, Because no provision had been made for the widow, either in satisfaction of the marriage agreement, or of her lawful claim of dower: *Secondly*, Because Joseph Vaugine, the only child of Stephen Vaugine, had been, in no way, provided for. Upon an examination of the deed, it was found, that in it the name of Monnette, (the negro girl, then about twelve years old, about whom and her children this contest has arisen) did not appear, as did the names of all the other negroes of the estate. She then being in possession of the widow, the defendant Mary, as she had been before, from the death of Francis Vaugine, by a deed of that date, executed by James Scull, John Dodge, Francis N. Vaugine, Creed Taylor, and Paul Vaugine, (reciting their willingness to do equal and impartial justice in the distribution of the estate of Francis Vaugine, deceased, of whom they claimed to be heirs, and that he had, in his life time, conveyed his whole estate, both real and personal, except the said negro girl Monnette to them, and that no part of his estate had been conveyed to Joseph, the minor, and only child of Stephen, deceased, also one of the heirs of Francis, deceased; therefore, acting for themselves, and in right of their children) they " granted, bargained and sold to the said Joseph Vaugine, the minor son of Stephen Vaugine, deceased, the said negro girl Monnette, to have and to hold to the said Joseph Vaugine, his heirs, &c: and, whereas, the said Joseph Vaugine is a minor, we hereby constitute and

appoint Mary Vaugine, grandmother of the said Joseph, his trus-tee and guardian, to take and keep possession of said negro girl Monnette, for the use of said Joseph Vaugine, to be kept by said Mary Vaugine until the said Joseph comes to the full age of twenty-one years, provided the said Mary Vaugine shall live so long; and, in case of her death, then to go to the possession of the lawful guardian of said Joseph, and in the event of the death of said Joseph, before he comes to the age of twenty-one years, or has heirs of his own, then said negro girl Monnette to revert and become the joint property of us, the undersigned heirs of Francis Vaugine, Sr. Given under our hands," &c.

For the satisfaction of the claims of the defendant, Mary Vau-gine, founded upon the marriage agreement, and her claims foun-ded upon her right of dower in the estate of her deceased hus-band, a deed was executed on the same day by James Scull, and Mannette, his wife, John Dodge, and Ettunnette, his wife, Fran-cis N. Vaugine, and Audel, his wife, Creed Taylor, in behalf of his children by Ulalia, his wife, and Paul Vaugine, and Harriet, his wife, giving, granting, and conveying to her eighty acres of land, with the improvements upon it, all the stock of cattle and hogs of the estate, then on the south side of the Arkansas river, three head of horses, two yoke of oxen, and the whole property, negroes, and other articles then in existence, which the defendant Mary had, at the time of her marriage, in 1826, with Francis, in consideration of which, she, as a party to the deed, signing and sealing the same, acknowledged satisfaction of her claim under the marriage agreement, and surrendered the same, and relin-quished all right to dower in the estate.

From that time, the negro girl Monnette, and her increase, con-tinued in Mary Vaugine's possession until after the death of Jo-seph Vaugine, a period of upwards of fifteen years.

Upon this state of facts, supposing them all to have been established by proper evidence, which, as we have remarked, is contested, the question arises, whether or not the statute of limi-tations, interposed and insisted upon by all the defendants—who

do not contest or litigate as among themselves at all—is a bar to a recovery by the complainants.

To avoid the statute bar, it is not shown that any of the complainants were infants, or otherwise within the savings of the statute, at any time within five years next before the commencement of this suit; but it is insisted that the possession of Mary Vaugine was, as trustee, under an express and continuing and subsisting trust, up to the death of her grand son Joseph, which occurred within that period. And they rely upon the deed of 25th of April, 1831, conveying the slave in question to Joseph, by the terms of which, as we have seen, Mary Vaugine is made trustee to hold possession of the slave. In her answer, she denies that she ever was trustee, or held the slaves in question as such, but in her own right; and there is no testimony of her acceptance of the supposed trust created by the deed, except in the deposition of Creed Taylor, which was objected to as incompetent evidence, upon the ground of his interest in the event of this cause; he being liable over to his children, as it is contended, in the event they fail in the suit, by reason of the defendant's gaining title by the efflux of time under his (Taylor's) act by deed. But conceding the deed properly in evidence, and the testimony of Taylor in connection with it admissible, which, as we have remarked, it is unnecessary to decide, the question is, will all that remove the statute bar?

This necessarily depends upon the legal effect of the deed. Then, what was this legal effect, even when construing the words "heirs of his own" to mean "heirs of his body," as was proven by the complainants, against the objection of the defendants,' to have been the intention of the grantors? Clearly, as we think, to create, so far as the grantees could do so, an absolute estate in Joseph Vaugine, the grantee, quit of all trusts and conditions whatsoever, within the doctrine several times recognized by this court, that although chattels and money may be limited over after a life interest, they cannot be, after a gift of the absolute property: nor can there be an estate tail in a chattel interest, for

that would lead to a perpetuity, and no remainder over can be permitted on such a limitation, it being the settled rule, that the same words, which, under the English law, would create an estate tail as to freeholds, give the absolute property as to chattels. *Moody vs. Walker*, 3 *Ark. R.* 187, 188.

It being perfectly apparent in this case, from the language of the whole deed, taken together, that it was the intention of the grantors, that the slave should not revert, if Joseph had children, whether he died under or over twenty-one years of age, and that she should revert if he died without children, whether under or over that age, and this construction being for the benefit of Joseph, is fully authorized by the rule, which is as old as construction itself, that "a grant shall be taken most strongly against him who made it, and most beneficially for him to whom it is made." *Noyes Maxims, p.* 62. And being adopted, it follows that, being an attempt to create an estate tail general in a personal chattel, the absolute property is vested in the grantee, so far as the grantors could do so, and hence, any condition or proviso repugnant to such absolute grant, is simply void, as is shown by the authorities cited to the point. And these being void, Mary Vaugine was no trustee, there being nothing left in the grantors upon which a trust could be raised; and allowing the complainants' proof that Mary Vaugine held under this deed, she must be taken, in the absence of proof to the contrary, to have held in accordance with its legal effect: and this being adverse to any rights of the complainants, her possession was consequently adverse to any claim of theirs, and necessarily let in the statute bar, unless displaced by proofs, which would bring the complainants, or any of them within the savings of the statute, which have not been made. We think, therefore, that this ground of the defence must prevail against all of the complainants; and this without any regard to the nature of the title that was in fact vested in Joseph Vaugine by the deed, which, it must be borne in mind, vested title, so far as it did so at all, not in a trustee for his use and benefit, but in himself. And we are free to say, that

if this slave really belonged to the estate of Francis Vaugine, deceased, as the complainants allege in their bill, and adults and minors were entitled to equal distributive shares in her, it would be difficult to see how, in a land of laws, the deeds of the adults, before distribution under authoritiy of some proceeding in the proper court, could operate to vest title in the grantee to any specific property, otherwise than by way of estoppel as against the grantors. But like several other questions mooted, to which we have alluded, it is not necessary to decide this; and it is mentioned only to show more distinctly that the conclusion, at which we have arrived, as to the allowance of the defence of the statute bar, had no necessary connection with it.

Upon the whole case, we are of the opinion, that the entire decree of the court below ought to be reversed. And for as much as a portion of the property that was in litigation in this cause, to wit: the slave Monnette, and her children, and the hires and profits of the same pending this suit, are in the hands of a receiver of the court below, it seems most proper that the final decree should be entered in that court. It will, therefore, be ordered that this cause be remanded. with instructions to the court below, to call the receiver to account, and cause him to deliver said slaves to the custody of the party, or his or their legal representative, from whom they were taken by the process of that court, and to pay over the hires and profits accrued in his (the receiver's) hands, or which ought to have accrued, to the same: that as to so much of the complainants' bill as relates to the lands of which Stephen Vaugine died seized or possessed, and to which a portion of the complainants are entitled, as we have held, subject to the rights of the defendant Matilda Marshall, which vested in her, under the Territorial laws, as the widow of the said Stephen Vaugine, deceased, that the same be dismissed, without prejudice to the rights of such of the said complainants as are so entitled to inherit said lands, so encumbered; and, as to the residue of complainants' bill, that it be dismissed absolutely, all at their costs.